Rodger and Dana BRIDGES *v.* Denise BUSH

CA 05-352 220 S.W.3d 259

Court of Appeals of Arkansas
Opinion delivered December 14, 2005

*J. Slocum Pickell,* for appellants.

*Carl J. Madsen,* for appellee.

KAREN R. BAKER, Judge. Appellants, Rodger and Dana Bridges, appeal a Grant County Circuit Court order setting aside an adoption. Appellants have four points on appeal: that the trial court erred in setting aside appellants' adoption of the minor child; that the trial court erred in finding appellants committed fraud upon the court in obtaining the adoption; that the trial court erred in

finding appellants' failure to file genetic, health and social history regarding the child was not in compliance with adoption statutes; that there was insufficient evidence to set the adoption aside based on fraud, duress, or intimidation.

Appellants filed a petition for adoption of minor A.B. on January 13, 2003. Appellee, Denise Bush, and her husband adopted A.B. from her biological parents. On January 10, Ms. Bush and her husband signed consents to adopt and relinquishments of parental right forms. The forms were signed in the Bush home with Ms. Bridges present, but without the presence of a notary public. The following day, Ms. Bridges took the papers to her attorney's secretary, who notarized the consents despite not being present when the forms were signed. Four days after the consents were signed, Ms. Bush's husband died.

On January 29, appellants appeared before the court to obtain the adoption, but the court denied their request because a home study had not been completed. They were informed that the adoption decree would be entered once a home study was completed and was satisfactory. However, testimony regarding the adoption was taken so that appellants would not have to appear before the court again. A home study was eventually completed and filed and an adoption decree was entered on April 16. In September, an amended adoption decree was entered, granting appellee visitation with A.B.

Appellee filed a motion to set aside the adoption on April 2, 2004. She asserted that appellants obtained her consent through fraud, duress, and intimidation and that appellants did not strictly comply with the adoption statutes. Following a hearing, the adoption was set aside on October 20. This appeal followed.

Although appellants enumerate four issues for reversal of the trial court's decision, their arguments may be combined into essentially two issues. In their first, second and fourth points, appellants challenge the trial court's finding of fraud. In their third issue, appellants challenge the trial court's finding that their failure to file genetic, health, and social history regarding A.B. did not comply with the adoption statutes.

We review adoption proceedings de novo, and the trial court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Vier v. Hart*, 62 Ark. App. 89, 968 S.W.2d 657 (1998). In cases involving

minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interests. *Reid v. Frazee*, 72 Ark. App. 474, 41 S.W.3d 397 (2001). This court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the court to observe the parties carries as great a weight as one involving minor children. *Id.*

Appellants contend that the trial court erred in setting aside the adoption based upon fraud. They argue that there was insubstantial evidence to support such a finding. In *McAdams v. McAdams*, 353 Ark. 949, 109 S.W.3d 649 (2003), the court explained:

> The fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. It is not sufficient to show that the court reached its conclusion upon false or incompetent evidence or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, in issue in the proceeding before the court which resulted in the decree assailed.

> . . . .

> The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed. It must be a fraud practiced upon the court in the procurement of the judgment itself.

*See also Wunderlich v. Alexander*, 80 Ark. App. 167, 92 S.W.3d 715 (2002). We have also noted that the party seeking to set aside the judgment has the burden of showing that the judgment was obtained by fraud, and the charge of fraud must be sustained by clear, strong, and satisfactory proof. *McAdams, supra.*

 It is undisputed that on January 10, 2003, appellee and her husband signed consents to adopt and relinquishments of parental rights. It is also undisputed that the papers were taken to the Bush's attorney, where they were notarized; however, the notary was not present when the consents were signed.

This issue is critical due to appellee's assertion that she did not know what she signed. Ms. Bush testified that on January 5, she and Ms. Bridges had discussed A.B. staying with the Bridges while her husband was ill. Ms. Bridges agreed, but informed Ms. Bush that she wanted to enroll A.B. in day care but there were papers that needed to be signed. When Ms. Bridges went to the Bush's home on January 10, to get A.B., she brought some papers and told Ms. Bush that she and her husband needed to sign them. When Ms. Bridges was questioned about what the papers were, she informed Ms. Bush that they were "the papers we talked about." Ms. Bush assumed they were papers to get A.B. into daycare and signed them without reading them, as did Mr. Bush.

In contrast, Ms. Bridges testified that on January 5, Ms. Bush called and asked "when do you want to come get your little girl," and that Ms. Bush told her that Mr. Bush would sign the adoption papers. Ms. Bridges also stated that when she went to the Bush's home on January 10, she placed the papers on the kitchen table and went into the playroom to visit A.B. A few minutes later Ms. Bridges returned to the kitchen and Ms. Bush told her that the papers were signed.

Disputed facts and the determination of the credibility of witnesses are within the province of the circuit judge, sitting as the trier of fact. *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d. 17 (2005). Confronted with this testimony, the trial court found Ms. Bridge's testimony incredible.

Additionally, the court found that the evidence presented was extrinsic to the matter tried before the court and therefore was fraud upon the court. In support of its finding the trial court stated that "the consents were presented to the court as being authentic original documents, properly executed by the two subscribing parties, before a commissioned officer, a notary public, who attested that the signatures were made by the persons named and were made in their presence and were made for the purposes stated in the documents." The court also held that the consents were in violation of Ark. Code Ann. § 9-9-208(a)(1) (Repl. 2002), which requires consents to be executed in the presence of the court or in the presence of the person authorized to take acknowledgements.

Based on the foregoing, we cannot say the trial judge's finding that a fraud was practiced on the court in procuring the decree is clearly erroneous.

Finally, we address appellants' issue that the trial court erred in finding their failure to file genetic, health and social history

regarding A.B. was not in compliance with the adoption statutes. The trial court specifically stated in its order that this alone was not conclusive to its finding to set aside the adoption, therefore the case was decided on fraud rather than non-compliance with the adoption statute. Consequently, any decision we might render on this issue would be moot and as a general rule, we will not address moot issues. *See Forrest Const., Inc. v. Milam,* 345 Ark. 1, 43 S.W.3d 140 (2001).

Affirmed.

GLADWIN, CRABTREE, VAUGHT, and NEAL, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. The trial court set aside the final adoption order based primarily upon a finding that there had been a fraud practiced upon the court in the manner in which the two parental consents to the adoption had been executed. The other matters cited by the trial court do not rise to the level of fraud, and there was clearly no duress used in obtaining the consents.

While it is appropriate that the trial court determine the credibility of the witnesses, it is troubling that the court apparently did not consider, nor does the majority mention, the fact that appellee, Denise Bush, began to fraudulently collect a social security check for the child of over $800/month when her husband died several days after they had signed the consents, that she continued to collect these checks for a number of months after the adoption was final, the post-decree modification to the adoption order that she procured providing for visitation with the child, and the fact that Mrs. Bush waited until almost a year after the decree was entered, and after the social security check was cut off, to contest the adoption. Mrs. Bush admitted that she and her spouse signed the consents but claims not to have read them or to have known what they were, even though she and her spouse had themselves adopted the child in question during the events that transpired in this case. This is incredible, as the forms were captioned in bold type "CONSENT TO ADOPTION AND RELINQUISHMENT OF PARENT AND CHILD RELATIONSHIP." Because Mrs. Bush acknowledged that she had executed the form, I would reverse and remand.